COMPLAINT PART 1

Victoria L. Nelson, Esq. (NV Bar No. 5436)
Email: vnelson@nelsonhoumand.com
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@nelsonhoumand.com
**NELSON & HOUMAND, P.C.**
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:     702/720-3370
Facsimile:      702/720-3371

*Electronically Filed On: November 19, 2013*

*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>WILLIAM WALTER PLISE,<br><br>Debtor. | Case No.  BK-S-12-14724-LBR<br>Chapter    7 |
| SHELLEY D. KROHN, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>MITCHELL D. STIPP, an Individual; JAMES L. MOORE, an Individual; MSJM ADVISORS, LLC, a Nevada Limited Liability Company; STIPP INVESTMENTS, LLC, a Nevada Limited Liability Company; AQUILA INVESTMENTS, LLC, a Nevada Limited Liability Company; AQUILA MANAGEMENT, LLC, a Nevada Limited Liability Company; PLISE DEVELOPMENT AND CONSTRUCTION, LLC, a Nevada Limited Liability Company; CHAPARRAL CONTRACTING, INC, a Nevada Corporation; CHAPARRAL CONTRACTING, INC., a Delaware Corporation; 5550 LAS VEGAS, LLC, a Nevada Limited Liability Company; 2055 ALCOVA RIDGE, LLC, a Nevada Limited Liability Company; 7 MORNING SKY LANE, LLC, a Delaware Limited Liability Company; TWIN CEDARS HOLDINGS, LLC, a Delaware Limited Liability Company; SI HOLDINGS, LLC, a Nevis Corporation; MITCHELL D. STIPP and AMY STIPP as Co-Trustees of the MESECS TRUST, a Cook Islands Trust; AMY STIPP, an Individual; CITY CROSSING 1, LLC, a Nevada Limited Liability Company; CITY CROSSING 2, LLC, a Nevada Limited Liability Company; CITY CROSSING 3, LLC, a Nevada Limited Liability Company; CITY CROSSING 4, LLC, a Nevada Limited Liability Company; CITY CROSSING 5, LLC, a Nevada Limited Liability Company; CITY CROSSING 6, LLC, a Nevada Limited Liability | Adv. Proc. No.  _____<br><br>**COMPLAINT FOR (1) ALTER EGO; (2) AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b) AND NRS CHAPTER 112; (3) AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548; (4) RECOVERY OF BANKRUPTCY ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 550; (5) TURNOVER OF BANKRUPTCY ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542; (6) INJUNCTIVE RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7065 AND FEDERAL RULE OF CIVIL PROCEDURE 65; AND (7) CONSTRUCTIVE TRUST** |

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

- 1 -

1  | Company; CITY CROSSING 7, LLC, a Nevada
2  | Limited Liability Company; CITY CROSSING 8,
   | LLC, a Nevada Limited Liability Company; CITY
3  | CROSSING 9, LLC, a Nevada Limited Liability
   | Company; CITY CROSSING 10, LLC, a Nevada
4  | Limited Liability Company; CITY CROSSING 11,
   | LLC, a Nevada Limited Liability Company; CITY
5  | CROSSING 12, LLC, a Nevada Limited Liability
   | Company; CITY CROSSING 13, LLC, a Nevada
6  | Limited Liability Company; CITY CROSSING 14,
   | LLC, a Nevada Limited Liability Company; CITY
7  | CROSSING 15, LLC, a Nevada Limited Liability
   | Company; AMERICAN VISTA CONSULTING,
   | LLC, a Nevada Limited Liability Company; DOE
8  | individuals 1-10; and ROE corporations 1-10,

9  | Defendants.    Judge: Honorable Linda B. Riegle

10  Plaintiff Shelley D. Krohn, the duly appointed Chapter 7 Trustee in the above-referenced

11  bankruptcy case (referred to herein as "Plaintiff" or "Trustee"), by and through her counsel,

12  Victoria L. Nelson, Esq. and Jacob L. Houmand, Esq. of the law firm of Nelson & Houmand,

13  P.C., complains and alleges as follows against defendants, Mitchell D. Stipp ("Stipp"), James L.

14  Moore ("Moore"), MSJM Advisors, LLC ("MSJM Advisors"), Stipp Investments, LLC ("Stipp

15  Investments"), Aquila Investments, LLC ("Aquila Investments"), Aquila Management, LLC

16  ("Aquila Management"), Chaparral Contracting, Inc., a Nevada Corporation ("Chaparral

17  Contracting Nevada"), Chaparral Contracting, Inc., a Delaware Corporation ("Chaparral

18  Contracting Delaware"), Plise Development and Construction, LLC ("PD&C"), 5550 Las Vegas,

19  LLC ("5550 Las Vegas"), 2055 Alcova Ridge, LLC ("Alcova Ridge"), 7 Morning Sky, LLC ("7

20  Morning Sky"), Twin Cedars Holdings, LLC ("Twin Cedars Holdings"), SI Holdings, LLC ("SI

21  Holdings"), the MESECS Trust (the "MESECS Trust"), Amy Stipp, City Crossing 1, LLC ("City

22  Crossing 1"), City Crossing 2, LLC ("City Crossing 2"), City Crossing 3, LLC ("City Crossing

23  3"), City Crossing 4, LLC ("City Crossing 4"), City Crossing 5, LLC ("City Crossing 5"), City

24  Crossing 6, LLC ("City Crossing 6"), City Crossing 7, LLC ("City Crossing 7"), and City

25  Crossing 8, LLC ("City Crossing 8"), City Crossing 9, LLC ("City Crossing 9"), City Crossing

26  10, LLC ("City Crossing 10"), City Crossing 11, LLC ("City Crossing 11"), City Crossing 12,

27  LLC ("City Crossing 12"), City Crossing 13, LLC ("City Crossing 13"), City Crossing 14, LLC

28  ("City Crossing 14"), City Crossing 15, LLC ("City Crossing 15"), and American Vista

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

Consulting, LLC ("AMC") (the foregoing Defendants shall be collectively referred to as the "Defendants")[1] and alleges the following on information and belief:

## I.    JURISDICTIONAL ALLEGATIONS

1.    This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001.

2.    This adversary proceeding arises out of and is related to the above-captioned Chapter 7 case before the United States Bankruptcy Court (the "Bankruptcy Case"). This Court has jurisdiction in the instant adversary proceeding pursuant to 28 U.S.C. §1334 and because the issues raised by this action arise under sections 105, 502(d), and 544 of the Bankruptcy Code and relate to the Bankruptcy Case.

3.    Venue is proper under 28 U.S.C. § 1409.

4.    This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). If this adversary proceeding is determined to be "noncore," Plaintiff consents to the entry of final orders or judgments by the bankruptcy judge.

## II.    PARTIES

5.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 4 of the Complaint as though full set forth herein.

6.    Plaintiff was appointed as the Chapter 7 Trustee in the above-captioned Bankruptcy Case on April 23, 2012, and has acted in that capacity since her appointment.

7.    Upon information and belief, Plise Development and Construction, LLC ("PD&C") is a Nevada Limited Liability Company.

8.    Upon information and belief, Mitchell D. Stipp ("Stipp") is an individual currently residing in Clark County Nevada.

9.    Upon information and belief, James L. Moore ("Moore") is an individual currently residing in Clark County Nevada.

---

[1] In compliance with Fed. R. Bankr. P. 7020 regarding joinder of multiple parties in a single action, the claims asserted against the named Defendants arise out of the same transaction(s) and involve common issues of fact and law.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

10. Upon information and belief, MSJM Advisors, LLC is a dissolved Nevada Limited Liability Company in which the Articles of Dissolution were filed on or about July 2, 2012 with the Nevada Secretary of State.

11. Upon information and belief, Stipp Investments, LLC is a Nevada Limited Liability Company.

12. Upon information and belief, Aquila Investments, LLC is a Nevada Limited Liability Company.

13. Upon information and belief, Aquila Management, LLC is a Nevada Limited Liability Company.

14. Upon information and belief, Chaparral Contracting, Inc. is a Nevada Corporation.

15. Upon information and belief, Chaparral Contracting, Inc. is a Delaware Corporation.

16. Upon information and belief, 5550 Las Vegas, LLC is a Nevada Limited Liability Company.

17. Upon information and belief, 2055 Alcova Ridge, LLC is a Nevada Limited Liability Company.

18. Upon information and belief, 7 Morning Sky, LLC is a Delaware Limited Liability Company.

19. Upon information and belief, Twin Cedars Holdings, LLC is a Delaware Limited Liability Company.

20. Upon information and belief, Amy Stipp is an individual currently residing in Clark County Nevada.

21. Upon information and belief, SI Holdings, LLC is a Nevis Limited Liability Company.

22. Upon information and belief, the MESECS Trust is a Cook Islands Trust. Upon information and belief, Stipp and Amy Stipp are co-trustees of the MESECS Trust.

. . .

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

- 4 -

23.     Upon information and belief, City Crossing 1, LLC is a Nevada Limited Liability Company.

24.     Upon information and belief, City Crossing 2, LLC is a Nevada Limited Liability Company.

25.     Upon information and belief, City Crossing 3, LLC is a Nevada Limited Liability Company.

26.     Upon information and belief, City Crossing 4, LLC is a Nevada Limited Liability Company.

27.     Upon information and belief, City Crossing 5, LLC is a Nevada Limited Liability Company.

28.     Upon information and belief, City Crossing 6, LLC is a Nevada Limited Liability Company.

29.     Upon information and belief, City Crossing 7, LLC is a Nevada Limited Liability Company.

30.     Upon information and belief, City Crossing 8, LLC is a Nevada Limited Liability Company.

31.     Upon information and belief, City Crossing 9, LLC is a Nevada Limited Liability Company.

32.     Upon information and belief, City Crossing 10, LLC is a Nevada Limited Liability Company.

33.     Upon information and belief, City Crossing 11, LLC is a Nevada Limited Liability Company.

34.     Upon information and belief, City Crossing 12, LLC is a Nevada Limited Liability Company.

35.     Upon information and belief, City Crossing 13, LLC is a Nevada Limited Liability Company.

36.     Upon information and belief, City Crossing 14, LLC is a Nevada Limited Liability Company.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

- 5 -

37.     Upon information and belief, City Crossing 15, LLC is a Nevada Limited Liability Company.

38.     Upon information and belief, American Vista Consulting, LLC is a Nevada Limited Liability Company.

39.     The true names, identities or capacities, whether individual, corporate, political, associate or otherwise of any Doe and Roe Defendants are unknown to Plaintiff.   Plaintiff therefore sues and Doe and Roe Defendants by fictitious names.  Plaintiff is informed and does believe, and thereupon alleges, that: each of the Doe and Roe Defendants is responsible in some manner for the acts, actions and omissions herein referred to; each of the Doe and Roe Defendants has proximately caused general and special damages to Plaintiff as herein alleged; and Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of any said Doe and Roe Defendants when the same have been ascertained by Plaintiff, together with appropriate charging allegations.

**III.     GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

40.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 39 of the Complaint as though full set forth herein.

**GENERAL BACKGROUND AND THE CITY CROSSING BANKRUPTCY CASE**

41.     On June 2, 2008, City Crossing 1, LLC ("City Crossing") filed a voluntary petition under Chapter 11 of the Bankruptcy Code (Case No. BK-S-08-15780-BAM) (the "City Crossing Bankruptcy").

42.     City Crossing owned fifteen (15) parcels of real estate (the "Parcels") located in Henderson, Nevada, the sum of which totaled one hundred twenty-six (126) acres, which were ultimately intended to be developed into a mix-use real estate project.

43.     In or around February 2004, the Debtor founded Aquila Management in order to commence development of City Crossing.   To this end, Aquila Management formed the following fifteen (15) limited liability companies: (1) City Crossing 1, LLC; (2) City Crossing 2, LLC; (3) City Crossing 3, LLC; (4) City Crossing 4, LLC; (5) City Crossing 5, LLC; (6) City Crossing 6, LLC; (7) City Crossing 7, LLC; (8) City Crossing 8, LLC; (9) City Crossing 9, LLC;

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

(10) City Crossing 10, LLC; (11) City Crossing 11, LLC; (12) City Crossing, 12, LLC; (13) City Crossing 13, LLC; (14) City Crossing 14, LLC; (15) City Crossing 15, LLC (collectively, the "City Crossing Entities") on March 2, 2007.

44.     Upon information and belief, PD&C was the entity that served as the general contractor for the development of the City Crossing project.

45.     City Crossing's bankruptcy schedules and statements provided that the Debtor held a one hundred percent (100%) "indirect membership interest" in City Crossing and a one hundred percent (100%) membership interest in Aquila Management.

46.     Aquila Management entered into a series of short term loans from multiple lenders to finance the City Crossing Development.  Each loan was secured by one of the fifteen Parcels, and the City Crossing Entity holding such Parcel was the borrower with respect to the loan.  The loans totaled approximately One Hundred Sixty-Seven Million Eight Hundred Eighteen Thousand and Six Hundred Three Dollars ($167,818,603.00).

47.     The Debtor personally guaranteed each of the loans that were made to the City Crossing Entities.

48.     The City Crossing Entities were subsequently collapsed into City Crossing prior to the bankruptcy filing, which violated the terms of many of the loan agreements that expressly provided that each City Crossing Entity would be considered a single-asset real estate company as defined by 11 U.S.C. § 101(51B).  It appears that the Debtor's goal in merging the City Crossing Entities was to prevent City Crossing from being subject to the automatic stay requirements for single-asset bankruptcies under 11 U.S.C. § 362(d)(3).

49.     City Crossing's Bankruptcy Statement of Financial Affairs revealed that approximately Six Million Nine Hundred Sixty-Five Thousand Two Hundred Forty-Three Dollars ($6,965,243.00) was distributed to Aquila Managements, an entity in which the Debtor holds a 100% ownership interest, in the year preceding City Crossing's bankruptcy petition. City Crossing's Statement of Financial Affairs further states that "creditor" payments totaling approximately Three Million Two Hundred Forty-Seven Thousand Four Hundred Two Dollars ($3,247,402.00) were made to entities owned by the Debtor, not including approximately Seven

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

Hundred Fifty-Six Thousand Seven Hundred Seventy-Seven and 66/100 Dollars ($756,777.66) in legal fees to the law firm of White & Case, LLP for the period February 29, 2008 through May 31, 2008.

50.    On June 2, 2008, the same day that the City Crossing Bankruptcy was filed, City Crossing initiated an adversary proceeding (Adv. Proc. No. 08-01177-BAM) against each of the lenders who had loaned money towards the City Crossing development, seeking an injunction preventing them from enforcing the guarantees against the Debtor. The primary basis for the Complaint was that the Debtor was the owner of City Crossing, the Debtor was "the driving force behind [the City Crossing Entities]", and "[the Debtor] has the financial wherewithal to make a substantial contribution to the Debtor's reorganization . . ."

51.    On July 2, 2008, City Crossing filed a Disclosure Statement and Plan of Reorganization which provided that the Debtor would make a contribution of Six Million Dollars ($6,000,000) towards City Crossing's reorganization efforts.

52.    On November 3, 2008, City Crossing filed a Motion to Dismiss in the City Crossing Bankruptcy on the grounds that the Debtor was no longer willing to contribute the Six Million Dollars towards City Crossing's reorganization efforts.

53.    On November 14, 2008, the Court granted City Crossing's Motion to Dismiss, but ordered City Crossing to return approximately $221,250.00 in misappropriated cash collateral proceeds.

## THE FIVE MILLION DOLLAR LOAN FORGIVENESS IN FAVOR OF STIPP

54.    Upon information and belief, Stipp was the former Chief Operating Officer and General Counsel for PD&C.

55.    Upon information and belief, Stipp received Five Million Dollars ($5,000,000) in loan proceeds from December 2003 until July 2008 from Aquila Investments, LLC ("Aquila Investments"), Aquila Management, LLC ("Aquila Management"), and PD&C (the "Stipp Loan Proceeds").

56.    Upon information and belief, the Debtor, in his individual capacity and in his capacity as owner of Aquila Investments, Aquila Management, and PD&C, entered into a

Settlement Agreement with Stipp (the "Stipp Settlement Agreement"). The Stipp Settlement Agreement provided that the Stipp Loan Proceeds "shall be deemed to be advances against any future distributions to be made by Aquila Investments, LLC, a Nevada limited liability company, as part of the "Profits Interests" owned by Stipp Investments, LLC, a Nevada limited liability company."

57.    Upon information and belief, the Debtor testified during a Section 341(a) Creditors meeting that he executed the Stipp Settlement Agreement in December 2008, despite the fact that the Stipp Settlement Agreement stated that it was effective April 1, 2008.

58.    Upon information and belief, the Stipp Settlement Agreement released the Stipp Loan Proceeds without any consideration or any benefit to the Debtor.

59.    The execution of the Stipp Settlement Agreement in or about December 2008 constituted a "transfer" within the meaning of 11 U.S.C. §101(54).

**THE MSJM ADVISORS TRANSFER**

60.    On or about July 16, 2008, PD&C caused to be issued a Cashier's Check in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000) to MSJM Advisors (the "MSJM Advisors Transfer").

61.    On or about July 18, 2008, Moore and Stipp formed MSJM Advisors by filing Articles of Organization with the Nevada Secretary of State.

62.    The MSJM Advisors Transfer represented the proceeds that were available in the PD&C bank account.

63.    The Debtor testified at his 341 Creditors Meeting that the MSJM Advisors Transfer was payment for consulting services that were to be provided by Moore and Stipp following their departure from PD&C.

64.    Upon information and belief, when questioned generally about transfers to MSJM Advisors in the summer of 2008, the Debtor testified at a Section 341(a) Meeting of Creditors that such transfers would not have exceeded Two Hundred Fifty Thousand Dollars ($250,000), which represented the yearly salaries for Moore and Stipp and an amount far less than the actual amount of the MSJM Advisors Transfer.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

65.     Upon information and belief, despite the fact that Moore and Stipp contend that they were no longer employed by PD&C on the date of the MSJM Advisors Transfer, Stipp had access to and was using the PD&C American Express Black Credit Card and used it to purchase an extended trip in Hawaii in or about October 2008 charging Twenty-Eight Thousand Four Hundred Thirty-Eight and 70/100 Dollars ($28,438.70) for his Hawaiian holiday.  Of this amount, over Four Thousand Eight Hundred Dollars ($4,800) was expended for airline tickets for Stipp and Amy Upp a/k/a Amy Stipp, Stipp's now-current wife; over Sixteen Thousand Three Hundred Dollars ($16,300) was spent on a hotel room at the Kahala Hotel & Resort for a seven (7) day stay; over Three Thousand Dollars ($3,000) was charged by Stipp for a purchase from Cartier's while Stipp and Amy Upp were on their Hawaiian extravaganza; and, upon Stipp's return from his lavish holiday, Stipp charged a car payment to Mercedes-Benz Finance in the amount of Five Hundred Ninety-Five Dollars ($595) on October 20, 2008.

66.     Since leaving the employ of PD&C, Stipp charged Thirty-Eight Thousand Seven Hundred Twenty-Six and 31/dollars ($38,726.31) and Moore charged Fifteen Thousand Four Hundred Thirty-One and 82/100 dollars ($15,431.82) on the PD&C American Express Black Credit Card (collectively, the post-employment charges by Stipp and Moore on the PD&C American Express Black Credit Card shall be known as the "AmEx Transfers").

67.     Upon information and belief, the MSJM Advisors Transfer was made with the intent to hinder, delay, and defraud creditors.

68.     Upon information and belief, the Debtor received less than a reasonably equivalent value in exchange for the MSJM Advisors Transfer, and was insolvent on the date that the MSJM Advisors Transfer was made, or was rendered insolvent as a result of the MSJM Advisors Transfer.

**THE CHAPARRAL CONTRACTING FRAUDULENT TRANSFER**

69.     On or about August 30, 2011, Stipp formed Chaparral Contracting Delaware by filing Articles of Incorporation with the Delaware Secretary of State.

70.     On or about September 23, 2011, counsel for Chaparral Contracting Nevada filed a Satisfaction of Judgment whereby Chaparral Contracting Nevada would be paid Three

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

Hundred Forty-Five Thousand Dollars ($345,000) in settlement of it claims in the case entitled *McKimmey Electric, Inc, v. Flamingo/TC, LLC* (Case Number 2:10-cv-00382-PMP-RJJ) filed in the United States District Court for the District of Nevada (the "Satisfaction of Judgment").

71.    Upon information and belief, the Satisfaction of Judgment was notarized by Amy Upp a/k/a Amy Stipp, Stipp's current wife.

72.    On September 15, 2011, the Commonwealth Land Title Insurance Company issued a check made payable to Chaparral Contracting Nevada in the amount of Three Hundred Forty-Five Thousand Dollars ($345,000) (the "Chaparral Contracting Check").

73.    On or about September 15, 2011, Stipp opened a bank account in the name of Chaparral Contracting Delaware at J.P. Morgan Chase Bank, N.A. (the "Chaparral Contracting Delaware Account"). Upon information and belief, Stipp was the only individual with signatory authority on the Chaparral Contracting Delaware Account.

74.    On or about September 19, 2011, Stipp deposited the Chaparral Contracting Check in the Chaparral Contracting Delaware Account (the "Chaparral Contracting Transfer").

75.    Upon information and belief, Stipp formed Chaparral Contracting Delaware for the sole purpose of being the one hundred percent (100%) owner of an entity with the identical name of Chaparral Nevada and devising a scheme to acquire the proceeds from the Satisfaction of Judgment of Chaparral Nevada.

76.    On or about September 21, 2011, Stipp transferred Three Hundred Forty-Five Thousand Dollars ($345,000) from the Chaparral Contracting Delaware Bank Account to a bank account in the name of 7 Morning Sky, LLC held at J.P. Morgan Chase Bank, N.A. (the "7 Morning Sky Account"). Upon information and belief, Stipp holds sole signatory authority on the 7 Morning Sky Account.

77.    On or about November 23, 2011, Stipp transferred Eight Hundred Fifty-Seven Thousand Five Hundred Sixty-Eight and 09/100 Dollars ($857,568.09) from the 7 Morning Sky Account to a bank account in the name of Evergreen Asset Holdings, LLC held at J.P. Morgan Chase Bank, N.A. (the "Evergreen Asset Holdings Account"). Three hundred Forty-Five Thousand Dollars ($345,000) of the Eight Hundred Fifty-Seven Thousand Five Hundred Sixty-

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

Eight and 09/100 dollars ($857,568.09) that was withdrawn from the 7 Morning Sky Account can be directly traced to the Chaparral Contracting Transfer.

78.    Upon information and belief, Stipp held sole signatory authority on the Evergreen Asset Holdings Account.

79.    From November 23, 2011 until September 21, 2012, there was no activity in the Evergreen Asset Holdings Account.  Beginning on September 21, 2012, four (4) days after Plaintiff commenced an adversary proceeding against the Debtor pursuant to 11 U.S.C. § 727[2], Stipp withdrew Twenty-Eight Thousand Three Hundred Fifty Dollars ($28,350) from the Evergreen Asset Holdings Account in a period of five (5) days.  Each withdrawal was less than Ten Thousand Dollars.  Upon information and belief, Stipp withdrew the Twenty-Eight Thousand Three Hundred Fifty Dollars ($28,350) in this manner in order to prevent J.P. Morgan Chase Bank, N.A. from filing suspicious activity reports in compliance with Federal Banking Law.

80.    On or about October 8, 2012, Stipp withdrew Eight Hundred Twenty-Nine Thousand Two Hundred and 59/100 Dollars ($829,200.59) from the Evergreen Asset Holdings Account.  This withdrawal represented the remaining proceeds that were available in the Evergreen Asset Holdings Account.

81.    Upon information and belief, Stipp withdrew the Eight Hundred Fifty-Seven Thousand Five Hundred Sixty-Eight and 09/100 Dollars ($857,568.09) from the Evergreen Asset Holdings Account, including the Chaparral Contracting Transfer, for personal expenditures.

**THE DEBTOR'S FORMATION OF 5550 LAS VEGAS, LLC**

82.    On or about February 23, 2009, the Debtor formed 5550 Las Vegas, LLC ("5550 Las Vegas") by filing Articles of Organization with the Nevada Secretary of State.

. . .

. . .

---

[2] The lawsuit commenced by Plaintiff on September 19, 2012 is entitled *Krohn v. Plise* (Case Number BK-S-12-01046).  On November 5, 2013, the Court entered an Order Denying the Debtor a discharge based on his false oaths and accounts in not identifying his ownership interest in 5550 Las Vegas pursuant to 11 U.S.C. § 727(a)(5).

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

83. On or about February 27, 2009, the Debtor opened a bank account in the name of 5550 Las Vegas with Service First Bank of Nevada[3] (the "5550 Las Vegas Account"). The Debtor held sole signatory authority for the 5550 Las Vegas Account.

84. Upon information and belief, the only bank account for 5550 Las Vegas was located at Service First Bank of Nevada.

**THE 2055 ALCOVA RIDGE TRANSFER**

85. On or about October 29, 2007, Stipp formed 2055 Alcova Ridge, LLC ("Alcova Ridge") by filing Articles of Organization with the Nevada Secretary of State.

86. On or about May 24, 2011, the Debtor issued a check to Alcova Ridge from the 5550 Las Vegas Account in the amount of Fifty Thousand Dollars ($50,000) (the "Alcova Ridge Transfer").

**THE STIPP INVESTMENT TRANSFERS**

87. On January 17, 2006, Stipp formed Stipp Investments, LLC ("Stipp Investments") by filing Articles of Organization with the Nevada Secretary of State.

88. Between April 2009 and July 2010, the Debtor made the following transfers to Stipp Investments from the 5550 Las Vegas Account:

| Date of Transfer | Amount of Transfer |
| --- | --- |
| April 4, 2009 | $80,000 |
| July 10, 2010 | $ 7,800 |

89. The transfers from the 5550 Las Vegas Account to Stipp Investments shall be collectively referred to as the "Stipp 5550 Las Vegas Transfers".

90. Between July 2008 and January 2009, the Debtor made the following transfers to Stipp Investments from his various personal bank accounts:

. . .

. . .

---

[3] In or about August 2012, Service First Bank of Nevada was acquired by Bank of Nevada.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

| Financial Institution | Date of Transfer | Amount of Transfer |
|---|---|---|
| Merrill Lynch | July 18, 2008 | $100,000 |
| Bank of George | July 18, 2008 | $100,000 |
| Service First Bank of Nevada | December 21, 2008 | $220,000 |
| Meadows Bank | January 9, 2009 | $100,000 |

91.    The transfers from the Debtor's various personal bank accounts to Stipp Investments shall be collectively referred to as the "Stipp Transfers".

**STIPP'S FORMATION OF EVERGREEN ASSET HOLDINGS**

92.    On or about October 13, 2004, Stipp and Christina Calderon Stipp[4] formed the Stipp Family Trust Dated October 13, 2004 (the "Stipp Family Trust").

93.    Upon information and belief, the Stipp Family Trust initially held a one hundred percent (100%) ownership interest in Stipp Investments and Alcova Ridge.

94.    On or about February 20, 2008, The Stipp Family Trust transferred its one hundred percent (100%) ownership interest in Stipp Investments and Alcova Ridge to Stipp individually.

95.    On or about December 31, 2008, Stipp formed the MESECS Trust, a Cook Island Trust (the "MESECS Trust"). Upon information and belief, Stipp is the settlor and beneficiary of the MESECS Trust. Upon information and belief, Stipp and Amy Stipp are co-trustees of the MESECS Trust.

96.    On or about January 9, 2009, Stipp formed SI Holdings, LLC ("SI Holdings"), a Nevis[5] limited liability company. SI Holdings was formed pursuant to the Nevis Limited Liability Company Ordinance of 1995.

97.    Upon information and belief, the MESECS Trust held a one hundred percent (100%) ownership interest in SI Holdings.

---

[4] Upon information and belief, Christina Calderon-Stipp is the former spouse of Stipp.

[5] Upon information and belief, Nevis is an island in the Caribbean that has favorable asset protection laws governing limited liability companies.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

98. On or about February 16, 2009, Stipp formed the Mitchell D. Stipp Trust Dated February 16, 2009 (the "Stipp Trust"). Upon information and belief, Stipp was the settlor, trustee, and beneficiary of the Stipp Trust.

99. On or about February 16, 2009, Stipp transferred his one hundred percent ownership (100%) interests in Alcova Ridge and Stipp Investments to the Stipp Trust.

100. On or about March 29, 2010, Stipp formed 7 Morning Sky, LLC by filing Articles of Organization with the Delaware Secretary of State. Upon information and belief, the Stipp Trust held a one hundred percent (100%) ownership interest in 7 Morning Sky at the time of its formation.

101. On or about January 1, 2011, the Stipp Trust transferred its one hundred percent (100%) membership interest in Alcova Ridge and 7 Morning Sky to the MESECS Trust.

102. On or about November 18, 2011, Alcova Ridge and 7 Morning Sky entered into a Reorganization Agreement whereby they agreed to combine their respective companies into Evergreen Asset Holdings, a Delaware limited liability company.

103. On or about November 21, 2011, Stipp formed Evergreen Asset Holdings by filing Articles of Organization with the Delaware Secretary of State. SI Holdings holds a one hundred percent (100%) ownership interest in Evergreen Asset Holdings.

104. On or about November 22, 2011, Stipp executed a revocation of trust that revoked the Stipp Trust pursuant to Section 5.01 of the trust agreement.

105. On or about December 3, 2012, the name of Evergreen Asset Holdings was changed to Twin Cedar Holdings.

106. Upon information and belief, the current ownership structure of the entities in which Stipp currently holds ownership and control are as follows:

    (a) Stipp is the settlor, trustee, and beneficiary of the MESECS Trust.

    (b) The MESECS Trust holds a one hundred percent (100%) ownership interest in SI Holdings.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

(c)    SI Holdings holds a one hundred percent (100%) ownership interest in Twin Cedar Holdings, formerly known as Evergreen Asset Holdings.

(d)    Twin Cedar Holdings holds a one hundred percent (100%) ownership interest in 7 Morning Sky and Alcova Ridge.

**THE PLAINTIFF'S AVOIDANCE OF THE DEBTOR'S TRANSFER OF HIS OWNERSHIP INTERESTS IN CHAPARRAL CONTRACTING NEVADA, AQUILA MANAGEMENT, AQUILA INVESTMENTS, AND PD&C TO 0858487 B.C., LTD.**

107.    On October 19, 2001, the Debtor formed Aquila Investments, LLC ("Aquila Investments") by filing Articles of Organization with the Nevada Secretary of State.

108.    On February 24, 2004, the Debtor formed Aquila Management, LLC ("Aquila Management") by filing Articles of Organization with the Nevada Secretary of State.

109.    Upon information and belief, the one hundred percent (100%) owner of Aquila Investments was William Walter Plise (the "Debtor").

110.    Upon information and belief, the one hundred percent (100%) owner of Aquila Management is Aquila Investments.

111.    Aquila Investments is the sole member of a series of limited liability companies that the Debtor utilized to conduct his business and personal affairs including, but not limited to, the following: (1) City Crossing 1, LLC; (2) City Crossing 2, LLC; (3) City Crossing 3, LLC; (4) City Crossing 4, LLC; (5) City Crossing 5, LLC; (6) City Crossing 6, LLC; (7) City Crossing 7, LLC; (8) City Crossing 8, LLC; (9) City Crossing 9, LLC; (10) City Crossing 10, LLC; (11) City Crossing 11, LLC; (12) City Crossing, 12, LLC; (13) City Crossing 13, LLC; (14) City Crossing 14, LLC; (15) City Crossing 15, LLC; (16) Plise Development and Construction, LLC; (17) Plise Companies, LLC; (18) BRB Land, LLC; and (19) Talon Electric, LLC (collectively, the "Aquila Management Limited Liability Companies").

112.    On or about December 2, 1994, the Debtor formed Chaparral Contracting Nevada by filing Articles of Incorporation with the Nevada Secretary of State. Upon information and belief, the Debtor held a one hundred percent (100%) ownership interest in Chaparral

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

Contracting Nevada, an entity through which the Debtor conducted both his personal and business affairs.

113.    In addition, through his membership interest in Aquila Investments, the Debtor held an indirect membership interest in, and was able to control, the Aquila Management Limited Liability Companies.

114.    On January 3, 2011, the Debtor and Aquila Investments entered into a document memorialized as a Purchase Agreement (the "Purchase Agreement") with 0858487 B.C., Ltd. ("0858487 B.C.") wherein the Debtor and Aquila Investments agreed to sell the issued and outstanding membership interests of capital stock in the following companies in exchange for Twenty-Five Thousand Dollars ($25,000): (1) Aquila Investments, (2) BRB Land, LLC, (3) Nevada Aero Parts, (4) Got Sand, LLC; and (5) Chaparral Contracting, Inc. (the "Plise Companies").

115.    Section 5.1 of the Purchase Agreement states that the Debtor will no longer retain any membership interest or stock in the Plise Companies after the effective date of the Purchase Agreement:

> 5.1. No Continuing Interest.  As of the Closing Date, Seller shall not retain any membership interests or stock in the Companies, and all of the Seller's interest and Seller's capital accounts will be transferred to Purchaser.  From and after the Closing Date, the profits and losses and other income, gain, loss, deduction, or credit shall be credited or charged, as the case may be, to Purchase in accordance with the organizational documents of the Companies.  Nothing in this Agreement will affect the allocation to Seller of the profits, losses and other items of income, gain, loss, deduction, or credit allocable to the Seller's interest and attributable to any period before the Closing Date or any distribution or payments made to Seller in respect of the membership interests and/stock in the Companies before the Closing Date.

116.    Upon information and belief, the Purchase Agreement was intended to divest the Debtor of all interests in the Plise Companies prior to his bankruptcy filing in order to hinder, delay, and defraud his creditors by limiting the Trustee's ability to file fraudulent transfers based on distributions that were made from the Plise Companies to the Debtor and third parties.

. . .

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

117.    On January 18, 2013, Plaintiff commenced an adversary proceeding entitled *Krohn v. 0858487 B.C., Ltd.* (Case Number BK-S-01012-LBR) (the "0858487 B.C. Action") by filing a Complaint against 0858487 B.C. alleging claims for relief for (1) avoidance of fraudulent transfer pursuant to 11 U.S.C. § 548 and (2) recovery of fraudulent transfer pursuant to 11 U.S.C. § 550 (the "0858487 B.C. Complaint").

118.    0858487 B.C. failed to answer or otherwise respond to the 0858487 B.C. Complaint.  As a result, the Court entered default against 0858487 B.C. on March 15, 2013.

119.    On March 26, 2013, Plaintiff filed a Motion for Default Judgment against 0858487 B.C.

120.    On May 9, 2013, the Court entered an Order Granting Plaintiff's Motion for Default Judgment against 0858487 B.C. which avoided the transfer of the Debtor's ownership interests in Chaparral Contracting Nevada, Aquila Management, Aquila Investments, and PD&C as a fraudulent transfer pursuant to 11 U.S.C. § 548:

> **IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED** that any and all of the property interest transferred pursuant to the Purchase Agreement that was entered into between William Walter Plise (the "Debtor"), Aquila Investments, LLC, and Defendant 0858487 B.C., Ltd. (the "Purchase Agreement") on January 3, 2011 are avoided as fraudulent transfers pursuant to 11 U.S.C. § 548 and recovered for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 550.

121.    The practical effect of the Default Judgment entered against 0858478 B.C. was to avoid the Debtor's transfer of his ownership interests in Chaparral Contracting Nevada, Aquila Management, Aquila Investments, and PD&C so that Plaintiff could assert claims for relief for alter ego against each of these entities.

### THE DEBTOR'S FAILURE TO OBSERVE THE CORPORATE FORMALITIES OF PD&C

122.    On or about January 12, 1999, the Debtor formed PD&C by filing Articles of Organization with the Nevada Secretary of State.

123.    Upon information and belief, the one hundred percent (100%) owner of PD&C is Aquila Management.

NELSON & HOULMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

NELSON & HOULAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

124.    Upon information and belief, the one hundred percent (100%) owner of Aquila Management is Aquila Investments.

125.    Upon information and belief, the one hundred percent (100%) owner of Aquila Investments is the Debtor.

126.    Upon information and belief, the Debtor testified at a Section 341(a) Meeting of Creditors that he would routinely intermingle his personal funds with those of his corporate entities including, but not limited to, PD&C.

127.    Upon information and belief, PD&C is the alter ego of the Debtor.

128.    PD&C is influenced and governed by the Debtor.

129.    There is such a unity of interest and ownership that PD&C is inseparable from the Debtor.

130.    Upon information and belief, the Debtor has co-mingled the funds in the account of PD&C with those of his own funds.

131.    Upon information and belief, the Debtor has ignored the corporate formalities of PD&C.

132.    Upon information and belief, the Debtor has severely under undercapitalized PD&C and has channeled the assets of PD&C to his personal accounts.

133.    Under the facts and circumstances of his case, adherence to the fiction of a separate entity would promote injustice.

**THE DEBTOR'S FAILURE TO OBSERVE THE CORPORATE FORMALITIES OF AQUILA INVESTMENTS**

134.    Upon information and belief, the one hundred percent (100%) owner of Aquila Investments is the Debtor.

135.    Upon information and belief, the Debtor testified at a Section 341(a) Meeting of Creditors that he would routinely intermingle his personal funds with those of his corporate entities including, but not limited to, Aquila Investments.

136.    Upon information and belief, Aquila Investments is the alter ego of the Debtor.

137.    Aquila Investments is influenced and governed by the Debtor.

138.    There is such a unity of interest and ownership that Aquila Investments is inseparable from the Debtor.

139.    Upon information and belief, the Debtor has co-mingled the funds in the account of Aquila Investments with those of his own funds.

140.    Upon information and belief, the Debtor has ignored the corporate formalities of Aquila Investments.

141.    Upon information and belief, the Debtor has severely under undercapitalized Aquila Investments and has channeled the assets of Aquila Investments to his personal accounts.

142.    Under the facts and circumstances of his case, adherence to the fiction of a separate entity would promote injustice.

**THE DEBTOR'S FAILURE TO OBSERVE THE CORPORATE FORMALITIES OF AQUILA MANAGEMENT**

143.    Upon information and belief, the one hundred percent (100%) owner of Aquila Management is Aquila Investments.

144.    Upon information and belief, the one hundred percent (100%) owner of Aquila Investments is the Debtor.

145.    Upon information and belief, the Debtor testified at a Section 341(a) Meeting of Creditors that he would routinely intermingle his personal funds with those of his corporate entities including, but not limited to, Aquila Management.

146.    Upon information and belief, Aquila Management is the alter ego of the Debtor.

147.    Aquila Management is influenced and governed by the Debtor.

148.    There is such a unity of interest and ownership that Aquila Management is inseparable from the Debtor.

149.    Upon information and belief, the Debtor has co-mingled the funds in the account of Aquila Management with those of his own funds.

150.    Upon information and belief, the Debtor has ignored the corporate formalities of Aquila Management.

. . .

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89139
Telephone: (702) 720-3370
Facsimile: (702) 720-3371